UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES GERNDON,<br><br>                Plaintiff,<br><br>v.<br><br>CORRECTIONS CORPORATION OF AMERICA,<br><br>                Defendant. | Case No. 1:11-cv-00329-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

This matter is before the Court on Defendant Corrections Corporation of America's Second Motion to Dismiss. (Dkt. 27). Having reviewed the written arguments of the parties, as well as the record in this case, the Court has determined that oral argument is unnecessary, and therefore enters the following Order[1] granting Defendant's Motion and dismissing Plaintiff's Amended Complaint without prejudice.

## BACKGROUND/FACTS

Plaintiff alleges that, while incarcerated in the Twin Falls County Jail in 2003, he informed his jailors that he had a lump on his leg that doctors told him should be removed. According to Plaintiff, officials told him that the surgery would have to wait until he got out of prison. In 2004, Plaintiff was transferred to the Idaho Department of

---

[1] Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

**MEMORANDUM DECISION AND ORDER - 1**

Correction (IDOC).  Upon arrival, Plaintiff claims he again told his jailors of the lump. Plaintiff claims that IDOC officials also told him that the surgery would have to wait. According to Plaintiff, between 2006-2009, Plaintiff requested medical attention for the lump on at least four separate occasions. Neither the Twin Falls County Jail nor IDOC are named defendants to this action.

In 2009, Plaintiff was transferred to the Idaho Correctional Center (ICC), a private prison owned by Defendant CCA.  On August 18, 2009, Plaintiff finally received medical attention, through surgical removal of the lump, which was found to be cancerous. Plaintiff claims that because of the failure to take surgical measures earlier on, the cancer spread, forcing Plaintiff to endure several surgeries that have left him in constant pain. Plaintiff further alleges that CCA staff has refused to give him his prescribed pain medication.  It appears that Plaintiff also claims that prison staff failed to deliver Plaintiff's legal mail in relation to his filing of the pending Complaint.

Plaintiff finally alleges that between January and March of 2011, CCA worked on a construction project at ICC.  According to Plaintiff, the project filled the air with mold, fumes, and dust, which permanently damaged his lungs.

On April 25, 2012, the undersigned federal Judge granted Plaintiff's motion to proceed in forma pauperis, and directed service on Defendant.  On February 5, 2013, Plaintiff filed an Amended Complaint (Dkt. 26), and on March 1, 2013, Defendant filed the pending motion to dismiss arguing that Plaintiff failed to properly exhaust his administrative remedies.  (Dkt. 27).

**MEMORANDUM DECISION AND ORDER - 2**

## DISCUSSION

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Courts may not "read futility or other exceptions into [the PLRA's] statutory exhaustion requirements." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

Failure to exhaust remedies is an affirmative defense that should be brought as an "unenumerated Rule 12(b) motion" to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In the context of such a motion, a court's consideration of evidence outside of the pleadings does *not* transform the motion to dismiss into a motion for summary judgment. Rather, in deciding a motion to dismiss for failure to exhaust

---

[1] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 3**

administrative remedies, the Court "may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. The party asserting failure to exhaust bears the burden of proving such failure. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If a prisoner has failed to exhaust his administrative remedies, his claims must be dismissed. *Wyatt*, 315 F.3d at 1120.

1.  **Grievance Process**

ICC follows the grievance procedures of the Idaho Department of Correction. Declaration of Margaret Purcell (Dkt. 27-3) ("Purcell Declaration"). The IDOC's grievance process consists of three stages. *Id*. at ¶ 8. First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most directly involved" with the inmate's issue. *Id*. at ¶ 11. If the issue cannot be resolved informally through the use of a Concern Form, the inmate must then file a Grievance Form. *Id.* at ¶ 12. The Grievance Form must be submitted within 30 days of the incident giving rise to the grievance. *Id.* at ¶ 13. When submitting a Grievance Form, the inmate must attach a copy of the Offender Concern Form, showing the inmate's attempt to settle the issue informally. Only one issue may be raised in each grievance. *Id.* The reviewing authority is directed to return a completed grievance within 14 days. *Id.*

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision within 5 days of the inmate receiving the response to the grievance. *Id.* at ¶ 14. At this point, the appellate authority, usually the facility head, is directed to draft a complete response within 14 days. *Id*. at ¶ 15. Not until the completion

**MEMORANDUM DECISION AND ORDER - 4**

of all three of these steps--Concern Form, Grievance Form, and grievance appeal--is the grievance process exhausted. *Id.* at ¶ 17.

In this action, Plaintiff makes claims for three possible injuries: 1) From 2003 – 2009, Defendant allegedly failed to treat an allegedly cancerous lump on his leg; 2) from 2009 - 2011, Defendant allegedly refused to provide Plaintiff with adequate medication; 3) in early 2011, Defendant's construction project allegedly caused permanent damage to Plaintiff's lungs; and 4) from 2009 – 2011, Defendants allegedly lost or failed to deliver some of Plaintiff's legal work.

At ICC, all grievances are logged into a computer database, which is searchable by an inmate's name or IDOC number, or by year. *Id.* at ¶ 20. According to Ms. Purcell, the Grievance Coordinator for ICC, "there is no record in the ICC database that Mr. Gerdon ever filed a timely grievance regarding any of the following claims: 1) any allegation regarding the alleged taking of Mr. Gerdon's medical pills and legal work; 2) any allegation regarding a loss or failure to deliver legal mail at ICC from 2009 to August 7, 2011; 3) any allegation regarding ICC medical and the removal of the lump on Mr. Gerdon's leg from 2003-2009; and 4) any allegation regarding ICC medical staff and providing Mr. Gerdon with prescribed pain medication after his operations in 2009. *Id.* at ¶ 21.

Purcell does acknowledge, however, that Gerndon filed "a timely grievance with regard to his claim that ICC construction work in January and March of 2011 allegedly caused permanent damage due to "toxic air." *Id.* at ¶ 22.  However, after proceeding to the second stage of the grievance procedure, Plaintiff failed to file a timely appeal.  *Id*.

**MEMORANDUM DECISION AND ORDER - 5**

Instead, he attempted to file an appeal more than one month beyond the deadline, which was not accepted. *Id.* at ¶ 23.

2.  **Exhaustion of Administrative Remedies and Appeal**

In Plaintiff's Response, he claims to have properly exhausted his administrative remedies. In support of this contention, he has attached what appear to be two properly exhausted grievances. One grievance form relates to a shortage of grievance forms and another relates to second-hand smoke. He also includes a number of prisoner request forms and statements from four prisoners.

Nonetheless, Plaintiff has not submitted copies of any Grievance Forms or documents showing that he appealed any grievance decision now at issue. Therefore, there is no evidence that Plaintiff properly exhausted his administrative appeals. Thus, the Court finds that Plaintiff did not properly exhaust any issue now being raised in this action.

Defendants have met their burden of demonstrating that Plaintiff did not exhaust his administrative remedies. Although Plaintiff may have undertaken the first step of the grievance process—submitting an Offender Concern Form—at no point did he proceed past the first step. Therefore, according to the record, Plaintiff did not exhaust his administrative remedies, and the Court must dismiss the Amended Complaint.

3.  **Dismissal Without Prejudice**

Section 1997e(a) specifies that "[n]o action shall be brought" unless there has been exhaustion. The statute does not prescribe the proper response by the district court if that requirement is not met. However, Courts in the Ninth Circuit Court of Appeals have held

MEMORANDUM DECISION AND ORDER - 6

that the proper remedy for failure to exhaust is dismissal of the claim without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003).

Notably, "[t]he pre-filing exhaustion requirement is not excused by [a] prison's allegedly dilatory administrative procedures," *see Porter v. Nussle,* 534 U.S. 516, 524 (2002); *see also* 42 U.S.C. § 1997e(a), nor is a claim that has not been exhausted "cured by the filing of an amended complaint." S*ee McKinney v. Carey,* 311 F.3d 1198, 1199 (9th Cir. 2002).

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) Defendants' Motion to Dismiss (Dkt. 27) is GRANTED; and

2) Plaintiff's Amended Complaint (Docket No. 26) is DISMISSED without prejudice.

DATED: June 28, 2013

Honorable Larry M. Boyle
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 7**